IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO.   17-025 |
| MOREL GERONIMO BAIL | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by its undersigned attorneys, Louis D. Lappen, Acting United States Attorney for the Eastern District of Pennsylvania, and Eric L. Gibson, Assistant United States Attorney, files this Memorandum in aid of sentencing, scheduled for June 21, 2017.

**I.     INTRODUCTION**

On January 12, 2017, defendant Morel Geronimo Bail was charged by Indictment with one count of reentry after deportation, in violation of 8 U.S.C. § 1326(a) and (b)(1).   The defendant, a native and citizen of Guatemala, was deported from the United States on or about April 2, 2014, and was subsequently found in the United States, having knowingly and unlawfully reentered the United States without first applying for admission to the Attorney General of the United States or her successor, the Secretary for the Department of Homeland Security.   Defendant Bail entered a plea of guilty to the Indictment on March 29, 2017.   There is no plea agreement.

**II.     MAXIMUM PENALTY**

The statutory maximum penalty for a violation of 8 U.S.C. § 1326(a), when enhanced

1

under subsection (b)(1), because his removal was after a conviction for a felony, is 10 years imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment.[1]

## III.   FACTUAL BACKGROUND

According to his alien file, Bail is a native and citizen of Guatemala.   There is no evidence in his alien file that he is a citizen or national of the United States.

On or about April 2, 2014, Bail was removed from the United States to Guatemala.   In connection with this removal, immigration officials executed a Form I-205, Warrant of Deportation/Removal, which contains the defendant's name, signature, alien number, photograph and fingerprint.   It also contains a fingerprint which a Fingerprint Specialist from the Department of Homeland Security found was too poor to compare to Bail's most recent fingerprints.   The I-205 is also signed by the immigration officials who fingerprinted Bail and who witnessed the departure.   Prior to his removal, immigration officials served Bail with an I-294, Warning to Alien Ordered Removed or Deported, dated March 20, 2014, which warned him that he was prohibited from entering, attempting to enter or being in the United States "at any

---

[1] On December 21, 2011, Bail was arrested by Sanford Police in Florida and charged with Aggravated Battery, in violation of F.S.A. § 775.082 (F2), Aggravated Assault (F3), Tampering with Physical Evidence-Destroying, and Battery Domestic Violence.   According to the police report, Bail became upset with his girlfriend over the volume of music and a physical altercation began.   When she touched his shoulder in an attempt to calm him down, he shoved her against a wall, pulled out a knife and told her "I'm gonna fucking kill you!"   Bail then slashed her across the chest, cutting her multiple times.   When police arrived, the victim was covered in blood and they found the knife in the toilet.   On December 16, 2013, he pleaded guilty to all counts in the Circuit Court of the 18th Judicial District for Seminole County.   On January 15, 2014, he was sentenced to 180 days' imprisonment on each count to run concurrently with credit for 112 days. However, the terms of imprisonment on the first three counts were "withheld" (there was no such withholding as to the Battery-Domestic Violence count) and he was sentenced to eight years' probation on the first two counts and three years' probation on the third count.

time" following his removal because he had been convicted of a crime designated as an "aggravated felony." The form also advised him that he was required to request and obtain permission from the Attorney General to reapply for admission to the United States following his deportation and that illegal re-entry was a crime under 8 U.S.C. §1326 and punishable by two to twenty years' imprisonment. The I-294 is signed by the immigration official who served the warning.

On December 14, 2016, York ICE deportation officers Ogden, Szalczyk, Waynick, and Tedesco were conducting early morning surveillance operations at 256 W. State Street in Quarryville, PA 17566 ("target address"). At approximately 3:45 AM, the officers saw an older model Ford Econoline van (dark in color) pull into the driveway of the target address. A male subject, later identified as Bail, then left the target address and entered the van. Due to limited visibility during the early morning hours, the officers could not confirm whether or not the male subject was the target of their surveillance. The van pulled out of the driveway and headed south on W. State Street. The officers followed the van and conducted a traffic stop in an attempt to identify the male subject that had left the target address earlier. There were a total of 5 occupants in the van including the driver. The officers identified themselves as immigration officers to the driver and the four passengers in the rear. All were asked to provide identification. The driver was identified as a legal permanent resident but all of the passengers in the rear, including Bail, admitted to having unlawfully entered the U.S. without inspection.

Mobile biometrics were captured on scene and submitted through the IDENT and NGI databases for positive identification for all of the passengers in the van. Bail, who was seen leaving the target address, provided the officers with a fake Mexican identification card bearing

3

the name Ivan Antonio Velasquez-Vasquez.  However, through biometric results, the defendant was correctly identified as Morel Geronimo Bail.  Upon questioning as to his true identity, he admitted the Mexican ID card that he provided was fraudulent and that his real name was Morel Geronimo Bail and that he was a Guatemalan national who was previously deported to Guatemala in 2014.  ICE officers took Bail into ICE custody without incident and released the other occupants in the van.  Bail was then transported to the ICE office in York, PA for further processing.

After he was transported to York, Bail stated to ICE deportation officers that his complete and correct name was Morel Geronimo Bail and that he also used the name "Ivan Antonio Velasquez-Vasquez."  He again admitted that he was a native and citizen of Guatemala as were his parents.  He also admitted that he had been previously deported.  He further stated that he illegally entered the United States in approximately May of 2015 by crossing the Mexican border into Arizona without inspection and admission by an immigration official.  Finally, he admitted that he did not have any document that permitted him to legally reside in the United States and that he did not have permission from the Secretary of Homeland Security or the Attorney General to re-enter the United States after his removal.

ICE officials reinstated his prior order of removal and Bail signed the I-871, Notice of Intent/Decision to Reinstate Prior Order, indicating that he did not wish to make a statement contesting that determination.

A representative of the United States Citizenship and Immigration Services ("USCIS") would testify that USCIS has no record of the defendant applying for or receiving permission

from the United States Attorney General or her successor, the Secretary for the Department of Homeland Security, for admission into the United States after his removal.

A Fingerprint Specialist from the Department of Homeland Security determined that the fingerprint taken from the defendant by ICE officials on December 14, 2016 matches a fingerprint taken from the defendant following his initial encounter with ICE agents prior to his removal in 2014.

## IV.   BACKGROUND OF THE DEFENDANT

Bail is approximately 29 years old and is a native and citizen of Guatemala.   His last known address in the United States is 256 W. State Street, Quarryville, PA, 17566.   He stated that he is single and that he has two children, ages 1 and 2, who live in Guatemala with their mother.

## V.   SENTENCING GUIDELINES

Under the updated 2L1.2, which took effect on November 1, 2016, the base offense level remains 8.   He receives a 4 level enhancement under § 2L1.2(b)(2)(D)-conviction for any other felony offense- for his prior conviction/sentence (180 days' imprisonment + 8 years' probation) which occurred before his first order of removal.   The CHC is II (3 CH Points). With a two-point reduction for acceptance of responsibility, the total offense level is 10 with a corresponding guideline rage of 8-14 months.

## VI.   SENTENCING CONSIDERATIONS AND RECOMMENDATION

The parties agree with the calculation set forth in the Presentence Investigation Report. A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) calls for a sentence within the advisory guideline range.   The Supreme Court has declared: "As a matter of

administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 (2007).   Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a).   Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.   18 U.S.C. § 3553(a).

No factors have been identified, nor is the government aware of any that would warrant a departure from the advisory guideline range.

VII.  CONCLUSION

The government respectfully recommends a sentence of incarceration within the advisory guideline rage of 8-14 months.    The government is not seeking a period of supervised released.

>                                Respectfully submitted,
>
>                                LOUIS LAPPEN
>                                Acting United States Attorney
>
>
>                                  /s/ Eric L. Gibson
>                                ERIC L. GIBSON
>                                Assistant United States Attorney

Dated:   June 16, 2017

7

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Sentencing Memorandum has been served by hand delivery upon the following:

>Maranna J. Meehan, Esquire
>Federal Community Defender Office
>Suite 540 West, Curtis Center
>Independence Square West
>Philadelphia, PA 19106

      /s/ Eric L. Gibson
ERIC L. GIBSON
Assistant United States Attorney

Dated: June 16, 2017